IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

LORI F. DAVIDSON,                    )
                                     )
                Plaintiff,           )
                                     )
                                     )    CIV-04-1589-M
v.                                   )
                                     )
JO ANNE B. BARNHART,                 )
  Commissioner of Social Security    )
  Administration,                    )
                                     )
                Defendant.           )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. §405(g) of the final decision of

Defendant Commissioner denying her application for disability insurance benefits under Title

II of the Social Security Act, 42 U.S.C. §416(i), 423.  Defendant has answered the Complaint

and filed the administrative record (hereinafter TR___).  Both parties have briefed the issues,

and the matter has been referred to the undersigned Magistrate Judge for initial proceedings

consistent with 28 U.S.C. §636(b)(1)(B).  For the following reasons, it is recommended that

the Commissioner's decision be affirmed.

1

I. <u>Background</u>

Plaintiff filed her application for Title II benefits on June 11, 2001 (protective filing date), alleging she became disabled on May 15, 2001.  (TR 51-53).  Plaintiff alleged disability due to post-traumatic stress disorder, depression, degeneration of both hips, osteoarthritis, "RSD," and "osteoporia." (TR 62).  Plaintiff asserted that she suffered severe and constant pain in her hips causing her to be unable to stand or sit for longer than twenty minutes, difficulty walking, falling "a lot," and hand tremors caused by medications. (TR 62).  Plaintiff stated that these impairments began July 10, 1997, and that she was "laid off" from her last job on May 16, 2001, because she "missed so much work," could no longer stand or sit to do the job, never knew when her hips would give out and she would fall, and because her medications caused her hands to tremor. (TR 62).  Plaintiff described past relevant work as a thrift store manager, medical receptionist, and retail clerk. (TR 63, 78). Plaintiff also stated that she needed hip replacement surgery in both hips, that her "pain is unbearable most days," that she also has numbness in her hands and swelling "over [her] entire body," and she is anorexic.  (TR 69-70).  Plaintiff's application was administratively denied. (TR 26, 27).   At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Bundy ("ALJ") on December 3, 2002, at which Plaintiff and Plaintiff's husband testified. (TR 337-354).

At her administrative hearing, Plaintiff testified that she last worked in May 2001 as an office nurse but the doctor she worked for was retiring and he laid her off, that she had missed work due to pain, that she filed for and received unemployment benefits for

approximately four months, that she re-married in March 2002 and her husband was supporting her, that she is unable to work due to depression for which she takes medication "that's worked for [her]," that she does not see a mental health professional, that she also has panic attacks "every couple of days" for which she takes anti-anxiety medication (and the medication effectively resolves the attacks), and that on some days her "legs won't work or I'll be too swollen to walk." (TR 339-349).

Following the hearing, the ALJ issued a decision in which the ALJ found that Plaintiff has severe impairments due to depression, post-traumatic stress disorder ("PTSD"), and sclerosis of the acetabulum of the left hip. (TR 20). The ALJ found that despite these impairments Plaintiff has the residual functional capacity ("RFC") to perform work at the medium exertional level. (TR 21). Based upon this RFC for work, the ALJ found that Plaintiff is capable of performing her previous jobs as a medical receptionist, thrift store manager, or retail sales clerk, and she is therefore not disabled within the meaning of the Social Security Act. (TR 21-22). Plaintiff appealed this decision to the agency's Appeals Council and submitted additional medical evidence. (TR 7). The Appeals Council declined Plaintiff's request for review of the administrative decision (TR 4-6), and Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Standard of Review

Judicial review of this Complaint is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal

standards were applied. <u>Emory v. Sullivan</u>, 936 F.2d 1092, 1093 (10th Cir. 1991). The court will look to the record as a whole to determine whether the evidence which supports the Commissioner's decision is substantial in light of any contradicting evidence. <u>Nieto v. Heckler</u>, 750 F.2d 59, 61 (10th Cir. 1984); <u>Broadbent v. Harris</u>, 698 F.2d 407, 412 (10th Cir. 1983)(*per curiam*). If the Commissioner fails to apply the correct legal standard or substantial evidence does not support the Commissioner's decision, the court may reverse the Commissioner's findings. <u>Byron v. Heckler</u>, 742 F.2d 1232, 1235 (10th Cir. 1984)(*per curiam)*. The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. <u>Hamilton v. Secretary of Health & Human Servs.</u>, 961 F.2d 1495, 1498 (10th Cir. 1992). To find that the Commissioner's decision is supported by substantial evidence in the record, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion. <u>Bernal v. Bowen</u>, 851 F.2d 297, 299 (10th Cir. 1988).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §416(i). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. <u>See</u> 20 C.F.R. §404.1520(b)-(f) (2004); <u>see also</u> <u>Williams v. Bowen</u>, 844 F.2d 748, 750-752 (10th Cir. 1988)(describing five steps in detail). The claimant bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. §404.1512 (2004); <u>Turner v. Heckler</u>, 754 F.2d 326, 328

(10th Cir. 1985).  Where the plaintiff makes a *prima facie* showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show "the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." <u>Turner v. Heckler</u>, 754 F.2d at 328; <u>Channel v. Heckler</u>, 747 F.2d 577, 579 (10th Cir. 1984).

III. <u>Plaintiff's Claims and Defendant's Response</u>

Plaintiff does not question the ALJ's finding that she has the physical capacity to perform work at the medium exertional level.  Plaintiff's claims relate only to the ALJ's finding that she has the mental RFC to work.  Specifically, Plaintiff contends that the ALJ made inconsistent findings in evaluating the severity of her mental impairments, failed to discuss the report of a consultative examiner and treating physician, Dr. Alzira Vaidya, or give sufficient reasons for ignoring the opinion of this physician, and erroneously substituted his own judgment for that of another consultative examiner, Dr. Mary Sonntag.  Defendant responds that no error occurred in the ALJ's evaluation of the evidence and that there is substantial evidence in the record to support the Commissioner's finding that Plaintiff's mental impairments do not preclude her performance of her previous jobs as a medical receptionist, thrift store manager, or retail sales clerk.

IV. <u>Evaluation of Mental Impairments</u>

The ALJ's decision reflects his review of the medical evidence with respect to Plaintiff's allegations of and treatment for mental impairments.  The ALJ found that Plaintiff has severe mental impairments due to depression and PTSD with anxiety. (TR 20-21).  In

evaluating the Plaintiff's RFC for work despite these mental impairments, the ALJ noted that

Plaintiff has

> been treated for depression for many years.  She relates a long
> involved history of abuse that accounts for the depression and
> the recently diagnosed PTSD.  However, the depression and
> PTSD did not prevent her from working in the past.  She
> stopped working when the doctor she worked for retired.  She
> then drew unemployment for the maximum time allowed.  There
> is no evidence that she was not able to return to work because of
> her impairments but there is some evidence (notations by her
> treating physicians) that she did not return to work because she
> did not want to work but rather preferred to receive help from
> her family and unemployment benefits.  The recent medical
> assessment by Dr. Sonntag indicates that in those areas for
> which Dr. Sonntag used objective basis, Ms. Davidson has good
> to excellent ability to perform many basic work related activities
> while in the areas for which she used Ms. Davidson's self-
> reports her ability is described as poor to none.  Dr. Sonntag's
> assessment is not based solely on her own observations and
> objective studies; rather, much of it is based on subjective
> reports by the claimant.  Dr. Sonntag's medical assessment is not
> supported by her narrative report.  Therefore, this report is given
> less credibility and thus less weight than it would have been
> given if based on solely objective findings.
>
> Accordingly, the undersigned finds that the claimant
> retains the residual functional capacity to perform the full range
> of medium work.  Although she is treated for depression and
> PTSA with anxiety, the medications seem to ameliorate the
> symptoms.   She has reported no side effects from the
> medications.  Ms. Davidson was able to maintain employment
> despite her depression, PTSD and anxiety and there is no
> evidence that the conditions have worsened.  Therefore, the
> evidence is that she does not have more than minimal limitations
> related to her mental disorders and thus they do not substantially
> limit her ability to perform basic work related activity.

(TR 20-21).

Plaintiff contends that the ALJ's decision is inconsistent because the ALJ found that Plaintiff has severe mental impairments but then found that "she does not have more than minimal limitations related to her mental disorders...." (TR 21).  Plaintiff contends that the ALJ also erred in failing to include any mental limitations in the RFC determination.

At step two of the requisite sequential evaluation procedure, the ALJ was required to evaluate the severity of Plaintiff's mental impairments under 20 C.F.R. §404.1520a.  Under this regulation, the ALJ must first determine whether the claimant has medically-determinable mental impairments, then rate the degree of functional limitations caused by the medically-determinable mental impairments, and determine whether the mental impairments meet or are equivalent in severity to a listed mental disorder in the agency's Listing of Impairments. 20 C.F.R. §404.1520a(c) and(d).   In a separate analysis at step four, the ALJ is then required to determine Plaintiff's RFC for work despite her severe mental and/or physical impairments. 20 C.F.R. §404.1520(d)(3).

At step two, the ALJ determined that Plaintiff has medically-determinable mental impairments due to depression and PTSD which "are medically determinable impairments that cause some limitations of her ability to perform some basic work related activities. Therefore, these are 'severe' impairments within the meaning of the Regulations." (TR 20). The ALJ then found at step four that these impairments have resulted in only "minimal" functional limitations.

The ALJ did not err in finding that Plaintiff's mental impairments, although severe, do not significantly impair her ability to work.  The only examining physician in the record

who assessed Plaintiff's mental capacity for work is Dr. Sonntag. The ALJ accepted certain portions of this assessment and rejected other portions of the assessment, finding that the rejected portions of the RFC assessment were based solely on Plaintiff's subjective statements and were therefore not entitled to any weight because of the absence of an objective basis for the findings.

With respect to Plaintiff's abilities to make occupational adjustments, *i.e.*, follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently, and maintain attention and concentration, Dr. Sonntag checked boxes on an RFC assessment form indicating Plaintiff had either "fair" or "poor/none" abilities in these areas.  When asked to describe the medical/clinical findings that support this assessment, Dr. Sonntag noted only Plaintiff's subjective statements during the one-time consultative evaluation. (TR 325).  With respect to some of Plaintiff's abilities to make personal-social adjustments, including behaving in an emotionally stable manner, relating predictably in social situations, and demonstrating reliability, Dr. Sonntag found that Plaintiff would have "poor/none" abilities in these areas.  (TR 326).  When asked to describe the medical/clinical findings that support this assessment, Dr. Sonntag merely stated that the findings were "[d]ependent upon mental status on any given day." (TR 326).  The ALJ rejected these findings because they were not supported by objective medical evidence.  (TR 21).  As the ALJ noted in his decision, Dr. Sonntag's RFC assessment includes other findings of "good" or "unlimited/very good" abilities to make performance adjustments which are based on objective test findings rather than subjective measures. (TR 326).   These

objectively-based findings were adopted by the ALJ.  The ALJ also noted that the subjectively-based RFC findings by Dr. Sonntag were not consistent with the remainder of her consultative evaluation report.

Plaintiff questions the ALJ's reliance on the absence of objective medical evidence as a basis for rejecting portions of Dr. Sonntag's RFC assessment.  Plaintiff states that the Tenth Circuit Court of Appeals "has rejected such a distinction between objective and subjective evidence" and quotes from a decision without benefit of a citation to the source of the quotation.  The quotation is from the Tenth Circuit Court of Appeals' decision in Luna v. Bowen, 834 F.2d 161, 162 (10th Cir. 1987), in which the circuit court described objective evidence as "any evidence that an examining doctor can discover and substantiate" or is "amenable to external testing." Id.  Subjective evidence, on the other hand, is described in the Luna decision as "statements by a claimant or other witnesses on his behalf that are not based on information which an impartial medical expert can evaluate either from examining the claimant himself or from evaluating the claimant's test results or examination reports." Id. at 62 n. 2.

Contrary to Plaintiff's assertion, in Luna the Tenth Circuit Court of Appeals recognized and approved of the distinction between objective medical evidence and subjective evidence that was applied by the ALJ.  The ALJ's reasoning that the portions of Dr. Sonntag's RFC assessment based solely on subjective evidence rather than objective medical findings should be rejected is a proper analysis of the RFC assessment, and no error occurred in this respect. See 20 C.F.R. § 404.1527(d)(3) ("The more a medical source

presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.").   Additionally, the ALJ's reasoning that Dr. Sonntag's RFC findings of "fair" or "poor/none" abilities were inconsistent with the remainder of her evaluation report is well-supported by the record.  Dr. Sonntag's evaluation report indicates that psychological testing of Plaintiff showed she was malingering or exaggerating her mental symptoms. (TR 321).  Dr. Sonntag's report reflected that Plaintiff was only "mildly depressed" and "mildly anxious" and that her thought processes were "spontaneous and well organized." (TR 322).  Additionally, although Plaintiff described to Dr. Sonntag "problems with hallucinations," "four attempts at suicide," and an episode in 2002 of going "into anaphylactic shock," there are no medical records reflecting that Plaintiff sought medical treatment for or was diagnosed as having experienced hallucinations, suicide attempts, or an episode of "anaphylactic shock."  The ALJ provided well-supported reasons for rejecting the portions of Dr. Sonntag's RFC assessment based on subjective measures rather than objective testing or consistent clinical observations, and no error occurred in this respect.

Plaintiff contends that the ALJ improperly ignored the diagnostic opinion and assessment of Plaintiff's treating physician, Dr. Alzira F. Vaidya.  Plaintiff does not support this argument with any legal authority.  The medical record reflects that prior to the time that Plaintiff alleged disability she underwent therapy off and on between 1991 and 1996 at the Edwin Fair Community Mental Health Center where Dr. Vaidya, a psychiatrist, saw Plaintiff to monitor her anti-depressant medications.  (TR 195-250).  The treatment notes indicate a

diagnosis by Dr. Vaidya in 1991 of depressive disorder, history of alcohol and substance abuse, and eating disorder. (TR 242).   In 1993, Dr. Vaidya noted that Plaintiff was maintaining sobriety, her eating disorder was in remission, and she did not exhibit signs of depression. (TR 229).   In December 1996, Plaintiff's therapist noted on a treatment plan update that Plaintiff would no longer be undergoing therapy and would only continue to see Dr. Vaidya for medication checks. (TR 198).   However, there are no further records of ongoing therapeutic or non-therapeutic treatment of Plaintiff for a mental disorder.[1]

The prevailing standard for reviewing Plaintiff's claim that the ALJ erred in rejecting her treating physician's opinion requires the Commissioner to determine what weight to give the medical opinion.   "Generally, the ALJ must give controlling weight to a treating physician's well-supported opinion about the nature and severity of a claimant's impairments." Adams v. Chater, 93 F.3d 712, 714 (10th Cir. 1996).   Defendant contends that Dr. Vaidya cannot be considered a treating physician because Dr. Vaidya did not have a treatment relationship with Plaintiff either within a short time of or during the time that she alleged disability.   As the Tenth Circuit Court of Appeals stated in Doyal v. Barnhart, 331 F.3d 758 (10th Cir. 2003), "[t]he treating physician doctrine is based on the assumption that a medical professional *who has dealt with a claimant and his maladies over a long period*

---

[1]The record contains a treatment plan for Plaintiff at the mental health clinic dated March 26, 1997, and another treatment plan dated May 24, 2001, but the record does not contain notes of ongoing treatment after these dates. (TR 195-197). Thus, the treatment plans themselves, which merely set forth treatment goals for a short period of time, are not evidence of therapeutic treatment for a mental impairment.

*of time* will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." <u>Id.</u> at 762 (quotation omitted)(emphasis in original).  In determining whether a physician's opinion is entitled to controlling weight, the regulations direct that such factors be considered as the "[l]ength of the treatment relationship and the frequency of examination," and the "nature and extent of the treatment relationship." 20 C.F.R. §404.1527(d).  There are no records of any treatment of Plaintiff by Dr. Vaidya after August 1996. (TR 200).  At that time, the progress note authored by Dr. Vaidya indicates Plaintiff was working full-time as a secretary and was therefore not able to continue her therapy, her depression was under control with medication, and her eating disorder was under control. (TR 200). Plaintiff alleged disability beginning in May 2001, five years after the last record of treatment of Plaintiff by Dr. Vaidya.  The agency referred Plaintiff to Dr. Vaidya in October 2001 for a consultative mental status evaluation. (TR 112-114).  The consultative evaluation report does not indicate that Plaintiff was being treated by Dr. Vaidya.  Rather, Plaintiff stated she "sees a private counselor on an as-needed basis and sees a hypnotherapist regularly." (TR 112).  Thus, the ALJ did not err in failing to give controlling weight to the consultative examination report of Dr. Vaidya.

Moreover, the ALJ's failure to discuss Dr. Vaidya's consultative evaluation report is not error.  Plaintiff refers only to Dr. Vaidya's diagnosis of mental impairments and statement at the conclusion of the report that "[s]he will be able to handle her benefits if granted, but I doubt if she will be able to hold a full-time job because of the above

difficulties." (TR 114).  The "difficulties" cited by Dr. Vaidya include only Plaintiff's subjective statements during the evaluation, including her statement that she "can't walk or stand on her feet for very long" and "[h]er legs, hips, knees and ankles hurt." (TR 114).  It was not error for the ALJ to fail to give any weight to this one-sentence statement by the consultative examiner, which includes reference to physical conditions that the psychiatrist did not evaluate and was not qualified to evaluate.  Dr. Vaidya's report of the mental status examination of Plaintiff conducted that date does not contain evidence of disabling mental impairments. (TR 113).  Rather, the report of the mental status examination of Plaintiff conducted by Dr. Vaidya is consistent with the ALJ's finding that Plaintiff does not have mental impairments which significantly restrict her RFC for work.  Thus, because Dr. Vaidya's consultative evaluation report does not provide significant evidence which is not consistent with the ALJ's RFC finding, no error occurred in the failure of the ALJ to discuss this evidence.

The ALJ is required to consider "all relevant medical evidence" in making his decision, and "in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." Grogan v. Barnhart, 399 F.3d 1257, 1262 (10th Cir. 2005)(internal quotation omitted).  The ALJ stated in his decision that he had reviewed "all of the evidence of record" and had considered "the entire record" before making his decision. (TR 16, 21).  There is no reason to question these statements.  Accordingly, no error occurred

merely because the ALJ failed to discuss Dr. Vaidya's consultative evaluation report in his decision.

There is substantial evidence in the record to support the ALJ's RFC assessment with regard to Plaintiff's mental ability.   There is no record of persistent treatment of Plaintiff for a mental impairment after 1996, five years before she stopped working.  Plaintiff stated that she stopped working in May 2001 when the doctor she worked for retired. (TR 340). Plaintiff was still receiving unemployment benefits in October 2001. (TR 116).  Plaintiff's receipt of unemployment benefits during the time that she alleged she was disabled is evidence supporting the ALJ's finding that she is not disabled.  Johnson v. Chater, 108 F.3d 178 (10th Cir. 1997)(finding the "Commissioner's decision to deny Johnson disability benefits is bolstered by the fact that Johnson received unemployment compensation during the time she claims to have been disabled").  Although Plaintiff's husband testified that Dr. McCoy was providing therapeutic treatment of Plaintiff for mental impairments (TR 352), the record shows that Dr. McCoy saw Plaintiff on only three occasions on May 15, 2001, June 8, 2001, and November 26, 2002. (TR 105-109, 285-286).  During these office visits, Dr. McCoy prescribed medications based on Plaintiff's statements that she has anxiety with panic attacks and PTSD. (TR 107, 285-286).  Dr. McCoy noted in May 2001 that Plaintiff appeared slightly anxious and noted that she was experiencing "lots of situational stress" (TR 106, 107), but there are no records of therapeutic treatment of Plaintiff by Dr. McCoy for a mental disorder.   Plaintiff testified at her hearing that she was not seeing a mental health professional and that her anti-depressant and anti-anxiety medications were effective in

14

relieving her depression and anxiety attacks. Plaintiff reported to her treating physician, Dr. Ebberley, in January 2002 that she had stopped taking the anti-depressant medication previously prescribed for her and that she was doing well without it. (TR 267). Dr. Ebberley noted at this time that he would try to wean Plaintiff slowly off of her narcotic pain and anti-anxiety medications, indicating there was no medical reason for Plaintiff to continue taking these medications. (TR 267).

Other than one episode of "situational depression" Plaintiff's recent records of medical treatment show that her mental and physical condition is "stable" on anti-anxiety and pain medications. (TR 330, 332). Indeed, another treating physician indicated in September 2001 that Plaintiff needed to "wean off" of her anti-anxiety and pain medications because her symptoms had improved. (TR 335). Yet another treating physician noted in December 2003 that Plaintiff "needs to be off ... narcotics." (TR 309). Plaintiff refers to her husband's testimony at the hearing as evidence that her last employer provided "accommodations" that are inconsistent with the mental ability to work. Plaintiff's husband's testimony was vague at best regarding the Plaintiff's relationship with her last employer. He testified that the doctor for whom Plaintiff worked "would tolerate her missing work all the time because of his relationship to [her]." (TR 351). His testimony did not indicate that Plaintiff's mental impairments worsened such that she was unable to work. Both Plaintiff and her husband admitted that the doctor retired at the same time that Plaintiff stopped working for him. (TR 340, 351). Moreover, Plaintiff referred vaguely to "having pain" as the reason why she missed work and had to stop working in May 2001. (TR 340-341). The testimony of Plaintiff

15

and her husband do not indicate accommodations were made for her by her employer that were inconsistent with her mental ability to work.

Because there is substantial evidence in the record to support the ALJ's finding that Plaintiff has the mental ability to work, and because Plaintiff does not question the sufficiency of the evidence to support the ALJ's finding of a physical ability to perform medium work or that this RFC finding includes the ability to perform Plaintiff's past relevant jobs as a medical receptionist, thrift store manager, or retail sales clerk, the Commissioner's decision that Plaintiff is not disabled within the meaning of the Social Security Act should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for disability insurance benefits.  The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before ____August 16____, 2005, in accordance with 28 U.S.C. §636 and LCvR 72.1.  The parties are further advised that failure to file a timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656(10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this _____27th_____ day of ___July_____, 2005.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE